Jessie Katz, Executrix of Estate of George F. Harding, Deceased, Appellee, v. William Berkos et al., Defendants. William Berkos and Charles R. Smith, Appellants.

Gen. No. 42,206.

Heard in the third division of this court for the first district at the April term, 1942. Opinion filed December 9, 1942.

CHARLES R. SMITH, of Chicago, for appellants.

DONALD P. VAIL, of Chicago, for certain appellee.

ENOCH J. PRICE and OWEN N. PRICE, both of Chicago, for certain other appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

William Berkos was the owner of certain real estate located in Chicago. On March 23, 1927, he made, executed and delivered eight principal promissory notes, numbered from one to eight inclusive, one for $21,600, one for $2,600 and six for $5,400 each, all payable on or about two years after date, with interest at 6 per cent per annum, payable semiannually, and interest at 7 per cent per annum after maturity. To secure the payment of the notes, William Berkos and Pauline Berkos, his wife, executed and delivered a trust deed to the Chicago Title & Trust Company, as trustee. On May 25, 1939 Jessie Katz, executrix of the estate of George F. Harding, deceased, filed a complaint in the superior court of Cook county to foreclose the lien of the trust deed. She alleged that George F. Harding, during his lifetime, owned principal note No. 1; that note No. 3 was paid; that notes Nos. 2, 4, 5, 6, 7 and 8 were owned one each by Agnes McCoy, Luella McCoy, Margaret Smith Hayden, Thomas Smith, Henry Smith and James Smith; that payments to George F. Harding on account of note No. 1 reduced the principal amount due under the note to $6,600; that two of the remaining six notes were reduced by principal payments to the sums of $1,982 and $1,338, and the remaining four notes to the sums of $1,755 each; that interest was paid to March 23, 1933; that the balance of $6,600 on note No. 1, with interest at 7 per cent to March 23, 1933, was unpaid; that there was due on the last six described notes the sum of $10,340, with interest at 7 per cent from March 23, 1933, or a total of $17,000, together with interest from March 23, 1933, amounting to $7,503.62 on May 1, 1939, or an aggregate sum of $24,503.62; and that as principal payments were made certain lots were released from the lien of the trust deed. She brought the complaint for the benefit of the holders of all the notes. She further alleged that on April 11, 1927, Bedrich Mager, the then owner of the premises, executed a second trust

deed, which was subordinate to the trust deed she sought to foreclose. She averred that the Lawndale National Bank of Chicago, as trustee under the provisions of a trust agreement dated June 20, 1927, held title to a certain lot and that the beneficial interest therein was vested in Charles R. Smith and others. On July 28, 1939, pursuant to leave of court, plaintiff filed an amendment to her complaint showing that since the filing of the original complaint she ascertained that one of the defendants, Agnes McCoy, the holder of one of the notes sought to be foreclosed, had died, and that Warren D. Emerson, Jr., was the executor of her last will and testament. Accordingly, Emerson was named as a defendant in place of Agnes McCoy. The complaint was also amended by adding a paragraph showing that title of the property sought to be foreclosed vested in Charles R. Smith as to an undivided 34/100th interest, Helen Maloney as to an undivided 20/100th interest, Frank Kaiser as to an undivided 43/100th interest, and in the heirs-at-law of Julius Mager, deceased, as to an undivided 12/100th interest. On August 2, 1939 Charles R. Smith and William Berkos filed separate answers alleging that payments of $14,161.96 were made on the notes in excess of those credited in the complaint. These answers alleged that no interest was due and pleaded usury, citing sec. 6, ch. 74, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 67.06]. The answers asserted that because of the plea of usury and the payments made, there was a balance due on all the principal notes of $2,789.54. Defendants also claimed the release of additional lots because of prepayments.

On July 25, 1939, Charles R. Smith, one of the defendants in the foreclosure suit, filed his separate complaint in the superior court of Cook county for partition of the same property. The parties to the foreclosure suit were named as defendants. In this complaint Smith, referring to the notes sought to be

foreclosed, alleged that "this plaintiff further shows that most of the notes secured by this trust deed, if not all of the said notes, have been paid, and most, if not all of the real estate secured by the said trust deed, and still remaining not released from said trust deed should be released, if such happening has not taken place at this time." All of the noteholders were made defendants in the partition case. The owners and holders of the notes, in an answer filed in the partition suit, denied that most of the notes were paid, denied that any of the real estate secured by the trust deed should be released, and alleged that a large amount remained unpaid upon each and all of the notes, except note No. 3, which had been paid. The answer stated that Jessie Katz, as executrix of the estate of George F. Harding, deceased, was the owner of note No. 1 and that there was a balance due and unpaid on that note of $6,600; that Margaret Smith Hayden was the owner of note No. 6, and that there was a balance due and unpaid on that note in the sum of $1,755; that Thomas Smith was the owner of note No. 7, and that there was a balance due and unpaid of $1,755; that Henry Smith was the owner of note No. 4, and that there was a balance due and unpaid of $1,755; that Luella McCoy was the owner of note No. 2, on which there was a balance due and unpaid of $1,338; and that Warren D. Emerson, Jr. was the owner of note No. 8, on which there was a balance due and unpaid of $1,982, and that there was also interest due on each of said notes at the rate of 7 per cent per annum from March 23, 1933. The noteholders in their answer also stated that any right of partition by the plaintiff was subordinated to the lien of the notes, and that until the notes were fully paid and discharged, any partition would be meaningless. The answer also alleged the filing of the complaint to foreclose by Jessie Katz, as executrix of the estate of George F. Harding, deceased, on behalf of herself and all the other note-

holders on May 25, 1939, and averred that there was an unpaid balance due on all of the notes in the sum of $17,000, together with interest at 7 per cent per annum from March 23, 1933, amounting to $7,503.62, or a total balance due on the unpaid promissory notes at the time of the filing of the answer in the partition suit of $24,503.62. On April 15, 1940 a decree of partition was entered. This decree was drafted and presented to the court by the plaintiff therein, Charles R. Smith. Paragraph 8 of the partition decree finds that "the sum of $14,320 was due and unpaid on the said notes so secured by the said trust deed 9675004 on March 1, 1940, and interest at the rate of five percent per annum upon the said sum of $14,320 from March 1, 1940, until payment thereof." This decree appointed commissioners to make partition of the premises. The commissioners reported that the premises could not be divided without manifest prejudice to the parties in interest. On May 10, 1940 a decree of sale was entered in the partition suit directing that the real estate be sold at public auction, subject to the trust deed sought to be foreclosed securing payment of the eight promissory notes dated March 23, 1927. This decree found that "there was due on March 1, 1940 on account of said trust deed 9675004 and notes secured thereby the sum of $14,320, with interest at the rate of five percent per annum after [that] date, until the payment thereof."

On February 4, 1941, plaintiff in the foreclosure suit filed her "second amendment" to her complaint, and set out that on July 25, 1939 Charles R. Smith filed his complaint for partition; that the partition complaint alleged that most, if not all, of the notes were paid and that other real estate should be released; that a partition decree was entered on April 15, 1940, finding that there was due and unpaid on the notes the sum of $14,320, with interest at 5 per cent per annum from March 1, 1940, and that a decree of sale

was entered in the partition suit on May 10, 1940, the date of the sale being set for February 27, 1941. In this "second amendment," which was in the nature of a supplemental complaint, plaintiff in the foreclosure case also averred that the decree in the partition case fixed the amount of the indebtedness on the notes and also their character as a first lien, and asked foreclosure of the lien in the sum of $14,320, with interest at 5 per cent per annum from March 1, 1940. The answer (to this supplemental complaint) of William Berkos and Charles R. Smith admitted the allegations of fact but not the conclusions of law. Plaintiff filed replies more specifically pleading the conclusions of law stated in her so-called "second amendment." In the meantime, testimony in the foreclosure case was being taken before a master in chancery. Plaintiff in the foreclosure case put in her testimony before the master and the defendants tendered a witness and documents to prove the defense of usury alleged in their answers. Plaintiff objected, contending that the question of the amount of the indebtedness was settled in the decree entered in the partition suit. The master referred the question to the chancellor for instructions. The matter was then argued before the chancellor, who entered an order directing that plaintiff's objection to the proffered testimony be sustained. In the foreclosure case the owners of the notes agreed as to their respective shares in the sum of $14,320. The master found that under the doctrine of estoppel by verdict the sum of $14,320 was due and unpaid on the notes, with interest thereon at the rate of 5 per cent per annum from March 1, 1940. As to the contention of defendants that under the doctrine of estoppel by verdict plaintiff could not recover attorneys' fees, the master found that plaintiff could recover for the services of her attorneys in the conduct of the foreclosure case and in the defense of the partition suit. Objections to the master's report were allowed to stand as

exceptions. The chancellor overruled the exceptions and entered a decree in the foreclosure case finding that there was due to the owners of the notes the sum of $14,320, plus interest from March 1, 1940 at 5 per cent per annum, and allowing the plaintiff amounts expended in the prosecution of the foreclosure suit and $2,200 for her attorneys' fees. William Berkos and Charles R. Smith prosecute this appeal and pray that we reverse the order directing the master to refuse the evidence offered by the defendants, the order overruling defendants' exceptions to the master's report and the decree of sale, and that we remand the cause with directions for further proceedings in accordance with their contentions.

Plaintiff's theory of the case is that the pleadings in the partition suit placed in issue the amount due on the mortgage notes involved in the foreclosure proceeding; that the decree entered April 15, 1940 in the partition suit specifically found the amount due on these notes; that the parties to this proceeding are bound by the finding in the partition decree; that the attempt by defendants to show a smaller amount due is improper both under the doctrine of estoppel and as constituting a collateral attack upon the partition decree; that since there was no issue in the partition suit with respect to the matter of attorneys' fees and costs, and no finding by the court in that proceeding with reference to such items, and that since in the partition suit the premises were ordered sold subject to the lien of the mortgage here involved, plaintiff may recover her full attorneys' fees and costs. Defendants' (appellants') theory of the case is that they realized on March 1, 1940 that usury was not available to them in the partition suit and their offer to dismiss was made to noteholders of the first mortgage; that a settlement agreement was made and a partition decree entered within a few weeks; that it took the noteholders about nine months to decide they would not pro-

ceed with the settlement; that when the "second amendment" to the complaint was filed the defendants realized that, properly pleaded, the partition decree would be *res judicata* as to their independent defense that a number of lots should be released; that no evidence was offered on this point; that two questions of law remain; that *res judicata* does not apply to the usury defense, because this point was not pleaded or adjudicated in the partition suit and was not susceptible of adjudication; that as to the second question, *res judicata* being conceded, the plaintiff should not be permitted to prove costs and fees due at the time of entry of the partition decree because they had been proved and allowed in the partition suit, and for the further reason that they were susceptible of adjudication.

After the filing of the partition suit, discussions took place with a view to a settlement. These discussions resulted in an agreement whereby the sum of $14,320 was to be paid in full of all claims by the noteholders. The latter claimed an aggregate indebtedness of $24,503.62. The settlement was consented to by Miss McCoy, one of the noteholders, who later refused to accept the settlement tentatively arranged by her counsel. The settlement contemplated the completion of the partition proceeding within a 90-day period in which the money to pay the notes would be raised. The noteholders contend that they were averse to having any finding in the partition suit as to the amount due on the first mortgage without being sure that the amount of the settlement would be procured, and that the defendants desired the partition sale to be subject to the first mortgage so that should they fail to raise the money required by the settlement agreement, they (defendants) would not lose the 15 months redemption rights which they would have after the mortgage foreclosure sale. All the parties in interest signed a stipulation on November 29, 1939 providing that the

noteholders would accept in full of all sums due them for principal, interest, attorneys' fees and costs the sum of $14,320, if such sum was paid within 90 days; and that if such sum was not paid within 90 days, the foreclosure proceedings could proceed the same as if there had been no stipulation. The stipulation further provided that if $14,320 was not paid within 90 days, then the foreclosure proceedings "may proceed the same as if this stipulation had not been entered into, and nothing herein contained shall be in any way binding upon any of the parties hereto, nor shall the terms of this proposed settlement be disclosed to the court in said last mentioned proceeding." The stipulation was offered in evidence in the partition suit on December 12, 1939. No one appeared for the noteholders. On December. 4, 1939 the superior court entered the following order in the partition suit:

"This cause coming on to be heard on plaintiff's motion to strike the answers of Jessie Katz, Executrix of the estate of George F. Harding, deceased, et al., and it appearing to the court that the said Jessie Katz as such executrix heretofore and prior to the institution of this action filed her complaint in this court in case No. 39-S-6150, seeking the foreclosure of that certain trust deed recorded in the Recorder's Office of Cook County, Illinois, as document No. 9675004, and it further appearing to the court that plaintiff in this cause and various of the defendants hereto duly filed in that proceeding their answers asserting certain defenses to the said foreclosure proceeding, which same issues are common to this proceeding, and the court having heard evidence and arguments of counsel, and being advised in the premises finds: that it is to the best interests of all the parties hereto that this proceeding be not complicated and delayed by litigating herein the merits of the controversy relative to the amount of indebtedness secured by the said trust deed. It is, therefore, ordered and decreed that all questions

relative to the lien of said trust deed No. 9675004 and the amount of indebtedness secured thereby be, and the same are hereby withdrawn from this case, and it is further ordered that upon the entry of any decree of partition or of sale herein that said decree shall provide for such partition or sale to be made subject, except as to Lot 10 described in the complaint herein, to the lien of said trust deed recorded in the Recorder's Office of Cook County, Illinois, as document No. 9675004, leaving for determination in said cause 39-S-6150 the amount of indebtedness secured by said trust deed.''

Donald P. Vail was the attorney for plaintiff in the foreclosure case and represented the noteholders in the partition case. There is a conflict in the testimony as to what occurred after the partition decree was entered. It is contended that in January 1941, in a conference at Mr. Vail's office, he stated that all settlement negotiations having failed, the partition decree should be vacated and the entire matter thrashed out in the foreclosure proceeding. Mr. Vail further testified that at that time Mr. Smith denied there was any agreement for vacating the partition decree and that words were had. Mr. Vail stated that thereafter Mr. Smith again stated that he would not consent to a vacation of the partition decree and would oppose any motion to vacate it. Mr. Smith testified that he did not state that he would oppose any motion to vacate the partition decree. Mr. Vail testified that he was of the opinion that he had been negligent in failing to vacate the partition decree within the term, and that if Mr. Smith denied any agreement to vacate same, such a motion to vacate would be unsuccessful. Mr. Vail further stated that he therefore regarded himself as bound by the amount found due on the notes in the partition decree. In November or December 1940 Mr. Smith told Mr. Vail that he did not have the

power to vacate the partition decree, as there were other parties in the suit.

Defendants insist that they are not bound in the foreclosure suit by the amount found due on the mortgage notes in the partition decree, and that they should prevail in their plea of usury. The noteholders insist that the defendants are bound by the amount found to be due on the notes in the partition decree. The parties are in agreement that the case involves the application of the doctrine of estoppel by verdict as distinguished from the doctrine of estoppel by judgment. Both estoppels fall within the general heading of *res judicata*. The law on the subject is clearly and concisely stated in *Barry v. Commonwealth Edison Co.,* 374 Ill. 473, 478:

''At the outset in the consideration of the doctrine of *res judicata* or estoppel it must be noted that there is a wide difference between the effect of a judgment or ruling as a bar against the prosecution of a second action between the same parties upon the same claim or demand, and its effect, as an estoppel, in another action between the same parties upon a different claim or demand; in the former it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. (*Markley v. People,* 171 Ill. 260; *Baldwin v. Hanecy,* 204 id. 281; *Harding Co. v. Harding,* 352 id. 417.) Where, however, the second action between the parties is upon a different claim or demand, the judgment or ruling in the trial action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. *Riverside Co. v. Townshend,* 120 Ill. 9; *People v. Wyanet Electric Light Co.,* 306 id. 377; *Hoffman v. Hoffman,* 330 id. 413.

''The present suit does not involve the same claim or issue as that presented before the Commerce Com-

mission and, therefore, the rule that everything that might have been litigated is settled does not apply. In order that the finding of the commission operate as an estoppel under the other branch of the rule there must have been an issue decided against appellant that is material to his right of recovery in the present suit.".

The noteholders agree that the causes of action are different and that the broad rules of estoppel by judgment do not apply. They rely on the operation of the doctrine of estoppel by verdict. The question then arises as to whether the amount found due on the first mortgage notes in the partition decree can be again litigated by defendants, or whether they are bound by the finding. If that issue was litigated and passed upon, it cannot be again litigated regardless of the character of the prior suit. Defendants urge that the court erred in entering the order of May 8, 1941, directing the master to refuse evidence offered by them to prove the exaction of usury. We agree with plaintiff that to ascertain what the issues were and how decided, the court will look to the proceedings in the earlier case. The complaint in the partition suit contained allegations showing the execution of the first mortgage here involved; that most, if not all, of the notes were paid, and that most, if not all, of the real estate unreleased from the trust deed should be released. The complaint also sets out the original amounts of the notes and the names of the parties claiming an interest therein. The answer of the noteholders contained allegations denying that most of the notes secured by the trust deed had been paid; denying that any of the real estate should be released, and averring that a large amount remains unpaid on each and all of the notes, except note No. 3, which had been paid and canceled; averring that the real estate described in the trust deed, except as to lots released of record, was subject to the lien of the trust deed;

averring ownership of the respective notes and the amounts due on each note; that all of the notes bore interest at 7 per cent per annum after March 23, 1933; that plaintiff's partition rights were subordinate to the lien of the notes, reciting the filing of the foreclosure action, and stating that by reason of the prior pendency of that proceeding, no steps should be taken in the partition suit relating to the rights of the noteholders. The decree entered in the partition suit on April 15, 1940 found that the real estate was subject to the lien of the trust deed and that on March 1, 1940 there was due and unpaid on the notes the sum of $14,320, with interest at 5 per cent per annum from March 1, 1940. On May 10, 1940 a decree of sale was entered, directing the sale of the premises subject to the lien of the trust deed. We agree that the record shows that the amount due upon the notes was in issue by the pleadings in the partition suit and that there was a specific finding by the court of the amount due upon the same. The answers of the defendants admitted the statements of fact pleaded by plaintiff.

The decree of April 15, 1940 was specific and has been accepted by the parties. It is significant that none of the parties to that decree have sought to have it vacated or modified. Presumably, all of them were satisfied with it. We are of the opinion that the court did not err in entering the order of May 8, 1941, directing the master to refuse the evidence offered by defendants to prove the exaction of usury. The partition decree left nothing about which to speculate and such evidence would be inadmissible for the purpose of impeaching or contradicting the decree. As pointed out in *Rubel v. Title Guarantee & Trust Co.*, 199 Ill. 110, where a judgment is pleaded or offered in evidence in bar of a claim, and it is uncertain from the record what was adjudged at the time the judgment was entered, parol evidence is admissible to show what matters were in controversy, what testimony was

given and what questions were submitted to the court for its determination at the time the judgment was entered, but such evidence will never be received for the purpose of impeaching or contradicting the record.

Defendants state that the defense of usury was not pleaded and could not have been pleaded by plaintiff or defendants in the partition suit, and that this question was not adjudicated in the partition suit. Defendants cite cases which hold that where affirmative relief is sought in equity from a usurious transaction, the parties seeking such relief will be required to do equity. The court required the payment of the principal amount due with statutory interest. In the partition proceeding relief would have been granted if usury had been pleaded and established and all the usurious payments would have been credited to the defendants. They would have been required to pay the principal amount due with statutory interest. It must be remembered that at the time the partition decree was entered, plaintiffs therein (defendants here) knew that they were contending in the foreclosure case that the indebtedness under the first mortgage was greatly reduced because of the claim of usury. Hence, in presenting the decree (in the partition case) showing the amount due they undoubtedly had in mind their contentions in the foreclosure case. The decree in the partition suit was presented by the plaintiffs therein, who are the defendants here. Plaintiff in the partition case knew what his rights were when he filed and prosecuted that suit, and he cannot be heard to complain of the decree entered therein. The defendants are seeking, with the defense of usury, to show a different amount due than found by the court in the partition suit. The partition decree imports absolute verity and cannot be attacked in a collateral proceeding.

The attorneys for Luella McCoy and Warren D. Emerson, executor of the estate of Agnes McCoy, de-

ceased, point out that it does not appear anywhere in the record by pleading or evidence that either defendant paid any of the alleged usury. They suggest that Mr. Smith had no interest in the land until June 10, 1938, years after the alleged usury was paid, and that there is no theory mentioned in the record or in appellants' brief upon which Mr. Smith could plead or have any benefit of usury paid by other parties whose identity is not even stated or shown. These attorneys also suggest that as to Berkos, the partition decree shows that he had no interest in the title to the property on the day the decree was entered, and that when he parted with his interest does not appear, furthermore, no theory is suggested in the record or in appellants' brief upon which Berkos could plead or have any benefit of any usury which might have been paid by other parties whose identity the record does not disclose. The record does not show any pleading or proof by the defendants, or either of them, that they paid so-called usury or were in such privity with the party who claimed to have paid it as to be entitled to the benefit thereof. We agree with these contentions.

For the reasons stated, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.